**STATE of Tennessee, Appellee,**

v.

**Daryl W. BALTHROP, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 16, 1988.

Permission to Appeal Denied by Supreme Court May 31, 1988.

Paul J. Morrow, Jr., Nashville, W.B. Lockert and Jimmy Perry Lockert, Ashland City, for appellant.

W.J. Michael Cody, State Atty. Gen. & Reporter, Kymberly Lynn Anne Hattaway, Asst. State Atty. Gen., Nashville, Steve Garrett, Asst. Dist. Atty. Gen., Springfield, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of vehicular homicide and sentenced to serve seven years as a standard offender.

The defendant raises five issues: 1) whether the introduction of the defendant's statement to an officer after a warrant had been issued violated his rights to counsel and due process, as well as the *"Miranda"* requirements; 2) whether the trial court committed reversible error in allowing an officer to testify as a surprise rebuttal witness to statements made by the appellant without first showing that the defendant intentionally relinquished his known right against self-incrimination and right to counsel; 3) whether the trial court erred in charging the jury on flight; 4) whether the admissible evidence was sufficient to support the verdict; and 5) whether the court erred in sentencing the appellant to seven years for this offense.

The judgment is affirmed.

On May 16, 1986, the defendant and his friend, Diane Trail, joined others in a sky box at the baseball stadium in Nashville. They remained there for several hours. The defendant and others, including Trail, consumed alcoholic beverages. The defendant became obviously intoxicated. At approximately 11:00 p.m., when these people left the stadium, they convinced the defendant he was in no condition to drive his vehicle. The defendant, after some opposition, relented and allowed Trail to drive. The others described Trail as being capable of driving, although a subsequent blood alcohol test showed .13% alcohol in her blood.

There is no dispute between the state and the defendant that the defendant was not driving the vehicle when he left the stadium. The defendant's brother and his companion followed the vehicle north on I–24 for approximately ten minutes, and they observed that the defendant remained in the passenger seat.

Approximately forty-five minutes later, in Robertson County, the vehicle left the traveled portion of the highway and struck a flatbed truck that had just pulled to the shoulder of the road.

The driver of this truck testified he was emerging from the truck and saw the vehicle swerve toward him. He jumped back into the cab as the impact occurred.

The truck driver testified he then walked toward the vehicle and saw the defendant climb over the steering wheel and leave the vehicle through the area of the windshield which had been knocked out by the impact.

Trail was lying in the passenger seat with one arm hanging out of the passenger side of the vehicle. She had bled profusely and was dead. The passenger seat and the floorboard in the passenger area were soaked with blood.

The driver of the truck and another person who arrived on the scene testified the defendant kept ambling onto the highway as they tried to persuade him to sit on an embankment out of harms way.

The defendant remained at the scene until a vehicle with flashing emergency lights approached, whereupon he climbed up the embankment and disappeared. Officers unsuccessfully looked for him at both his residence and his parents' home.

The defendant arrived at the home of his parents approximately six hours after the collision, and his mother called an ambulance to transport him to the hospital.

The driver of the ambulance, an acquaintance of the defendant, testified he said to her, "I have messed up again."

The defendant called an expert on accident reconstruction, who testified that in his opinion the woman was driving the vehicle and the defendant was in the passenger seat when the vehicle struck the truck. In his opinion, the impact caused the people to be thrown to positions opposite from those they occupied at the time of the collision.

The state, in rebuttal, called a similar expert, who testified that in his opinion the defendant was driving the vehicle and the woman was in the passenger seat when the collision occurred.

These experts reached, of course, opposite views based upon their investigations.

■ On the matter raised in the first issue by the defendant, we find the defendant has waived any complaint on the introduction of the officer's testimony.

The officer went to the hospital with a warrant charging the defendant in this case. The officer did not give the defendant *"Miranda"* warnings but asked him about the accident. The defendant responded he did not wish to talk about the accident.

Although there is no written motion for discovery in this record before us, and although there is no order of the trial judge in the record, it is obvious the motion was made and the order was entered. When counsel objected to the evidence, the trial judge asked if he had been informed of this by reason of the discovery order. Counsel responded he had.

We think the trial judge properly admitted the evidence because the defendant failed to file a pre-trial motion to suppress this evidence. Tenn.R.Crim.P. 12; *State v. Randolph*, 692 S.W.2d 37 (Tenn.Cr.App. 1985).

■ The rebuttal testimony of an officer about remarks made to her is in a different posture.

This officer testified that while transporting the defendant to the jail upon his release from the hospital, she remarked that if she were ever to be the driver of a vehicle involved in an accident in which someone was injured or killed, it would always be on her conscience.

The defendant's precise response to her remark is not clear. In direct testimony, the officer said the defendant responded, "It would be on mine too." On being asked by the defendant's lawyer to repeat what he said, the officer said his response was, "It will be on mine too."

The officer testified in a jury-out hearing that she reported this conversation to the officer in charge of the case. The statement was not disclosed to the defendant on his discovery motion and was not revealed to the district attorney general until after the jury was selected.

The defendant says the admission of this evidence was erroneous because it was obtained in violation of his right to counsel and his privilege against self-incrimination. He further says the statement should have been excluded because it was not revealed to him on the discovery motion.

The defendant likens this conversation to that in *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), wherein officers in transporting Williams, who

was charged with killing a child, talked to him about how the undiscovered body would deteriorate and not receive a proper burial. Williams, whose counsel had instructed officers not to question him, reacted to these remarks by revealing the location of the body. The Supreme Court held the police conduct violated the defendant's right to counsel.

In this case, the testimony shows the defendant informed the officer that he had counsel waiting for him at the jail. He reasons therefore that this brings him within the *Williams* rule. We do not agree. The conversation was initiated by the defendant's question about the penalty for vehicular homicide. The officer declined to answer and advised him to consult his attorney or the attorney general. Defendant said he had a lawyer waiting for him, but there is no dispute that he freely engaged in general conversation with his custodian. We do not see in this conversation between the officer and the defendant any attempt to trick the defendant into making incriminating statements in violation of his right to counsel.

The defendant further claims the action of this officer was intended to cause him unknowingly to waive his *"Miranda"* rights as condemned in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

In *Innis,* as in this case, the officer gave the defendant appropriate warnings before taking him into custody. The officers who transported Innis began to talk about the need to locate the shotgun allegedly used in the crime because the shooting occurred near a school for handicapped children and one of them might find the gun and be injured. Despite further *"Miranda"* warnings, Innis then revealed the location of the gun. The Supreme Court held that when the police engage in conduct which they reasonably should know will be likely to elicit an incriminating response from the suspect, the evidence is inadmissible even though the statements are not the result of express questioning. The Court concluded the conversation just described was not

tantamount to interrogation and held the evidence admissible.

Again, we do not think the circumstances surrounding the conversation in this case rises to the level of subterfuge and trickery condemned in either *Williams* or *Innis.*

The state's failure to disclose the statement before trial is more suspect. We think the state may not justify the use of this evidence on the late discovery of it by the district attorney general or on the basis that it was offered in rebuttal rather than in proof in chief.

■ The officer to whom the statements were made reported them to the officer in charge of the case well before trial. To the extent the discovery rule makes statements in the possession of the state discoverable, the failure of officers to reveal them may not be justified by a claim of personal good faith on the part of the district attorney general, even though he acts promptly upon learning of their existence. The harm to the defendant is the same whether the failure to reveal was intentional or unintentional, and the value of the rule should not be diminished in either case. *See State v. Wright,* 695 S.W.2d 540 (Tenn.Cr.App. 1985).

■ Rule 16(a)(1)(A), Tenn.R.Crim.P., requires the state to reveal the substance of any oral statement made by an accused in response to an officer's interrogation if it is intended to be used in evidence. The state says this rule is not applicable in this case because they do not have to reveal rebuttal evidence on discovery. We do not agree with this proposition.

The rule makes no exception for statements to be used in rebuttal, and to hold that it does would greatly diminish the value of the rule. *See United States v. Mitchell,* 613 F.2d 779 (10th Cir.1980), *cert. denied* 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 604 (1980); *D. Raybin, 9 Tennessee Practice,* § 13.26 (1984).

■ The trial judge allowed this testimony because the oral remarks were not made in response to an interrogation. We reluctantly agree that this ruling was correct.

The pertinent part of the rule on this issue is as follows:

(1) Information Subject to Disclosure.

(A) *Statement of Defendant.*—Upon request of a defendant the state shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the district attorney general; *the substance of any oral statement which the state intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogations by any person then known to the defendant to be a law-enforcement officer.*

Tenn.R.Crim.P. 16(a)(1)(A) (emphasis added).

The comments to the Rule make no explanation why the revelation of the substance of oral statements is limited to those made during interrogation and not extended to any oral statements made which are incriminating. However, the right to discovery here is statutory and not constitutional, and the court may only determine whether the statutory right has been violated in the premises.

The evidence shows the remarks made by the defendant were not the result of interrogation by the officer, and thus they are not excludable because the state did not reveal them.

■ We find no error with the instruction on flight given by the trial judge. The evidence shows the defendant remained at the scene of the collision until emergency lights were seen. He then ran up an embankment and disappeared. Officers were unable to locate him at his ordinary places of habitation, and he did not surface for six hours. The jury was entitled to draw what inference they wished from these actions.

■ On the matter of the sufficiency of the evidence, the only real issue is whether the defendant was driving the vehicle at the time of the collision. This was a factual matter for the jury to determine, and our role is to review the evidence to determine if it was sufficient to establish this element of the crime.

From the summary of the evidence, the jury had to consider proof that the defendant was not driving when the vehicle left Nashville, that the truck driver saw him climb over the steering wheel and out of the windshield area on the driver's side of the car, and that the deceased was lying on the passenger seat of the car. Additionally, they had the conflicting opinions of two experts as to who was driving.

The jury has determined the defendant was driving this vehicle and has further determined his intoxication was the proximate cause of the woman's death. There is sufficient evidence in this record to support their finding beyond a reasonable doubt.

■ On complaint of the defendant we have reviewed the sentence in this case de novo. The record shows that the defendant had previously been convicted of D.U.I. and that he did not fulfill a condition of probation on that conviction. There is other evidence of the defendant's inability to conform his conduct to suitable requirements. We find the sentence of seven years is appropriate and fix that term as the punishment in this case.

DWYER and SCOTT, JJ., concur.