IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 15, 2002 Session

## RICHARD BROWN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Robertson County
No. 8167     James E. Walton, Judge**

———————————

**No. M2002-01243-CCA-R3-PC - Filed April 2, 2003**

———————————

The petitioner appeals the denial of post-conviction relief from his first degree murder conviction. He claims he received ineffective assistance of counsel because his trial counsel (1) failed to adequately challenge suppression of the petitioner's confession and (2) failed to have the petitioner testify at trial. We affirm the trial court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**.

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Richard Brown.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and B. Dent Morris, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A jury convicted the petitioner, Richard Brown, of the first degree murder of Charles Wade Bush. On direct appeal, the relevant facts supporting this conviction were determined to be: On August 9, 1991, the petitioner and co-defendant, Charlie Lee Maddle, met the victim in a bar and subsequently accompanied the victim to his home. At his home, the victim passed out after consuming "copious" amounts of alcohol. The petitioner and Maddle then decided to take $204 from the victim. They took the victim from his house and, according to the petitioner, Maddle approached the victim from behind and accosted him. A struggle followed, and the victim then spoke Maddle's name. Maddle stated they would have to kill the victim, because the victim could now identify them. Maddle began to strangle the victim and cut the victim's throat with a knife several times. The petitioner eventually took the knife and stabbed the victim four times in the shoulder and neck. The victim died as a result of these wounds.

In addition to the above facts, review of the record reveals the following: Detective Donald Bennett of the Robertson County Sheriff's Department met with the petitioner on August 10, 1991. Detective Bennet mirandized the petitioner, who signed the standard waiver and admonition form. The petitioner then stated he did not wish to talk and was taken to his cell. Detective Bennett later had one of the jail officials initiate a clothing exchange and photograph of the petitioner. At this time, the petitioner allegedly stated he wanted to talk. The police again advised him of his Miranda rights, and he signed another waiver form. He then gave a statement confessing to the murder, stating he took the knife from Maddle to "finish it off." Detective Bennett asked the petitioner if he was trying to kill the victim by taking the knife, and the petitioner said, "[Y]es sir."

At the motion to suppress hearing, the petitioner denied that he stated he wanted to talk, and he claimed the police officials initiated the conversation which led to the confession. The motion to suppress the confession was denied. At trial, the petitioner did not take the stand in his own behalf. Thereafter, he was convicted of first degree murder and sentenced to life in prison. On direct appeal, this court addressed the issues of admission of evidence and jury instructions and affirmed the conviction. State v. Richard Brown, No. 01-C-01-9301-CC0027, 1993 Tenn. Crim. App. LEXIS 579 (Tenn. Crim. App. at Nashville, Aug. 26, 1993), perm. to appeal denied, (Tenn. Nov. 29, 1993). The petition for post conviction relief, alleging ineffective assistance of counsel, was denied after a hearing on July 31, 1996.

At the post-conviction hearing, the petitioner testified that, during his initial questioning, he told the detectives that he no longer wanted to talk, but the detectives still talked to him about the possibility of the death penalty and presented him with Maddle's statement. He said he told them[1] he wanted his attorney before any more questions were asked. According to the petitioner, they then took him to his cell but, around thirty to forty-five minutes later, Detective Bennett came to his cell, told him they needed to take pictures, and said, "Have you got something to tell me." At that point, the petitioner gave his incriminating statement. He said that, other than the motion to suppress, his attorney did nothing about the admission of the confession and, furthermore, he never had any discussions with his trial counsel about appealing the suppression ruling. The petitioner argued that his trial counsel could have done more in pursuing the alleged coerced, involuntary confession. Specifically, the petitioner said his trial counsel could have interviewed more witnesses, including Maddle's wife, the petitioner's sister, and his brother-in-law. However, the petitioner acknowledged that trial counsel did do some cross-examination of the police officers and pursued this issue at the suppression hearing. He testified that his sister was called to the stand at trial, but he could not remember if anyone else was called to testify. He said trial counsel failed to talk to enough people and did not bring up evidence, such as the lack of the petitioner's fingerprints on the knife or any other scientific tests. Furthermore, he testified that, had trial counsel called Maddle, Maddle might have admitted committing the crime.

---

[1] The petitioner was referring to Detective Bennett and Detective Perry when he said "them." The petitioner referred to the detectives as "them" or "he" quite often, and it is unclear which detective he was specifically referring to.

On cross-examination, the petitioner admitted that Detective Bennett came to his cell and took his photograph and that he had signed a waiver of his rights. He testified he was unaware of any other evidence that would disprove his confession.

Trial counsel testified he used a psychological examiner at the suppression hearing and explored the intoxication issue. He said his investigator checked out the crime scene. He did not call Maddle at trial because he believed calling him to testify would hurt the case. He said he did not appeal the voluntariness of the confession because he could find no law to contradict the findings at the suppression hearing.

On cross-examination, trial counsel stated he did not ask for exculpatory material from the State or call any additional witnesses. He said he did not try to argue voluntary manslaughter but tried to shift the burden for the murder to Maddle as much as possible. Trial counsel said he asked the petitioner everything he could think of about the circumstances surrounding the confession and he did not appeal the voluntariness issue because he felt such an appeal would be frivolous since his client initiated the contact that led to the confession. Trial counsel had been practicing law in Robertson County for twenty-three years. He testified that he was familiar with State v. Balthrop, which came through Robertson County, State v. Jenkins, and Harris v. New York, as he came across them in his research preparing for the direct appeal.[2] However, due to the findings at the suppression hearing, he felt an appeal on the voluntariness issue would be frivolous. He further acknowledged that courts can make a 180 degree turn concerning the direction of the law.

The petitioner called Detective Bennett, who said the petitioner initiated the conversation which led to the confession. Detective Bennett also said he had no knowledge of the State v. Balthrop case. On cross-examination, he testified that the petitioner signed an admonition and waiver form. On redirect, he said the petitioner did not request him to come to his cell for the photograph.

The petitioner was recalled and denied initiating talks after he requested an attorney and invoked his right to remain silent. He said Detective Bennett said to him, "Do you got something you want to tell me."

Post conviction relief was denied. In the order denying relief, the post-conviction court found that the statement made by the petitioner in the second interview was not coerced, crediting Detective Bennett's testimony that the petitioner initiated contact. The post-conviction court specifically found that the confession was not illegally obtained.

---

[2] State v. Balthrop, 752 S.W.2d 104 (Tenn. Crim. App. 1988) (the introduction of the defendant's statement to an officer after a warrant had been issued did not violate his rights to counsel and due process or the "Miranda" requirements); State v. Jenkins, 859 S.W.2d 364 (Tenn. Crim. App. 1993) (statement by the defendant in response to an improper interrogation was determined to be illegally obtained); Harris v. New York, 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971) (Miranda did not prevent the State from using the defendant's statements to police in order to confront the defendant with prior inconsistencies).

As to the ineffective assistance claim, the post-conviction court found that trial counsel interviewed all available witnesses and adequately investigated the crime scene. Additionally, despite the undisputed suggestion that the crime was Maddle's idea, there was no suggestion that the killing was perpetrated by someone other than the petitioner because the petitioner admitted he struck the victim at least twice for the purpose of "finishing him off." Further, there was nothing presented at the post-conviction hearing to indicate that any scientific work done by trial counsel was ineffective. The post-conviction court found that trial counsel covered the issue of the possibly tainted confession at the suppression hearing; therefore, there was no basis for any ineffective claim for failing to pursue the denial of the suppression motion. The post-conviction court also found the failure to call Maddle to the stand was not ineffective because there was no evidence to suggest that Maddle's testimony would have been helpful. Accordingly, trial counsel did not render ineffective assistance of counsel but far exceeded the standard required for attorneys representing defendants in criminal cases. The petitioner appeals the decision.

**Analysis**

On appeal, the petitioner argues that trial counsel was ineffective based upon the following grounds: (1) failure to pursue suppressing the confession made by the petitioner, by not calling enough witnesses to prove the involuntariness of the confession, and by not appealing the adverse ruling at the motion to suppress, and (2) failure to have the petitioner testify at trial. The petitioner's second claim is waived because it was not included in his petition for post-conviction relief and was not raised before the post-conviction court. This claim cannot be presented for the first time on appeal. Tenn. Code Ann. § 40-30-204(c)(d) (1997); Tenn. R. App. P. 36(a); *Hester v. State*, 450 S.W.2d 609, 611 (Tenn. Crim. App. 1969).

This Court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).

The test in Tennessee to determine whether counsel provided effective assistance is whether his performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, 104 S.Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones, based upon adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The trial judge's findings of fact on post-conviction hearings are conclusive on appeal, unless the evidence preponderates otherwise. Burns, 6 S.W.3d at 461. The post-conviction court's findings of fact are afforded the weight of a jury verdict, and this Court is bound by those findings unless the evidence in the record preponderates otherwise. Henley, 960 S.W.2d at 578; Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or reevaluate the evidence nor substitute its inferences for those drawn by the trial judge. Henley, 960 S.W.2d at 578-79; Massey v. State, 929 S.W.2d 399, 403 (Tenn. Crim. App. 1996). Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the trial court, not this Court. Burns, 6 S.W.3d at 461.

As discussed earlier, the post-conviction court found that trial counsel's performance was effective. We agree. A review of the record reveals that trial counsel's arguments at the motion to suppress hearing addressed the issue competently. He called witnesses to help establish the involuntariness of the confession, cross-examined adverse witnesses, and argued forcefully that the petitioner's confession was involuntary. With the broad range of competence afforded trial attorneys, we cannot say that trial counsel's performance was deficient. He was presented with a defendant who confessed to stabbing the victim in order to "finish him off." Trial counsel attempted to get that confession suppressed. Despite the admissibility of the petitioner's statement, trial counsel made efforts to defend his client, including interviewing witnesses, investigating the crime scene, and making strategic decisions about how to handle the crime scene evidence. The petitioner presented no evidence at the post-conviction hearing showing that his attorney was deficient or, even if deficient, any errors made by him were prejudicial to the petitioner's case. Furthermore, Maddle did not testify at the post-conviction hearing and, because the burden is on the petitioner to present evidence at the post-conviction hearing to show that trial counsel's actions were ineffective, Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990), the failure of Maddle to testify prevents the petitioner from meeting that burden.

The petitioner did not present evidence at the post-conviction hearing to preponderate against the finding that trial counsel was effective, including presenting *any* witnesses. He claims that his trial counsel should have interviewed more witnesses, yet he failed to present those witnesses at the hearing.

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that (a) a material witness existed and the witness could have

been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness injued to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Black, 794 S.W.2d at 757; see also Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). Neither the post-conviction court nor this Court can speculate on what a witness' testimony might have been if introduced by counsel. Black, 794 S.W.2d at 757. The petitioner's failure to present witnesses at the post-conviction hearing is fatal to his satisfying his burden on appeal. Absent speculation, we have no evidence to make a determination that any performance, or lack thereof, was prejudicial. There is no merit to this issue.

The petitioner also claims trial counsel should have raised the issue of failure to suppress on direct appeal because of his knowledge of several cases which dealt with the issue of coerced confessions. Trial counsel stated at the post-conviction hearing that he did not raise the suppression issue on appeal because he felt such an appeal would be frivolous. Trial counsel stated that, while he was familiar with those cases, he concluded they were insufficient to support a suppression claim on appeal. He based this decision on the findings made by the trial court. We cannot determine that those cases are of such magnitude that the failure to pursue an appeal would be ineffective assistance of counsel. As with any issue, there will always be cases to support an argument, yet the decision to appeal is still a strategic one, and that decision is left to the sound discretion of appellate counsel. Porterfield v. State, 897 S.W.2d 672, 678 (Tenn. 1995). It is counsel's responsibility to determine the issues to present on appeal. State v. Matson, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986) (citing State v. Swanson, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984)). This responsibility addresses itself to the professional judgment and sound discretion of appellate counsel. Porterfield, 897 S.W.2d at 678. There is no constitutional requirement that every conceivable issue be raised on appeal. Campbell v. State, 904 S.W.2d 594, 597 (Tenn. 1995). The determination of which issues to raise is a tactical or strategic choice. Id. Considering that trial counsel presented the suppression issue at a full motion to suppress hearing, where the trial court made specific findings that the petitioner was fully advised of his Miranda rights and made an understanding waiver of his rights, we cannot conclude that trial counsel's failure to raise the suppression issue on appeal constituted deficient performance.

Accordingly, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE