IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 5, 2005 Session

## STATE OF TENNESSEE v. MICHAEL D. STREET

**Direct Appeal from the Criminal Court for Williamson County
No. II-8392   Timothy L. Easter, Judge**

**No. M2004-00299-CCA-R9-CO - Filed July 20, 2005**

In this interlocutory appeal, the State challenges the trial court's suppression of various statements allegedly made by the defendant, Michael D. Street.  At the suppression hearing, the trial court excluded the statements based solely upon the fact that the State failed to comply with discovery Rule 16(a)(1)(A) of the Tennessee Rules of Criminal Procedure, requiring notice to the defendant. The trial court did not reach the constitutionality of the statements or otherwise recite its reasoning for admission of some statements and exclusion of others.  In consequence, we remand this matter to the trial court for further consideration and additional findings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Reversed and
Remanded**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

Eric L. Davis, Franklin, Tennessee, for the appellee, Michael D. Street.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Mary Katherine White, Assistant District Attorney General, for the appellant, State of Tennessee.

### OPINION

### Facts and Procedural History

On April 13, 2003, Deputies Matt Bontrager and Carol Matkin[1] of the Williamson County Sheriff's Department were called to the scene of an automobile accident involving the defendant. The defendant had crashed a vehicle into a tree in the front yard of a residence adjacent to Lewisburg

---

[1] This opinion will spell these witnesses' names as they appear in the transcript of the suppression hearing. At other places in the record, Bontrager is spelled "Bondtrager" and Matkin is spelled "Mackin."

Pike. At the time Deputy Bontrager arrived, the defendant was outside of the vehicle and bleeding from a broken nose. When the officers attempted to retrieve the defendant's identification from the vehicle, they detected a strong odor of marijuana and noticed a set of scales. The vehicle was then searched and a duffel bag containing over fifteen pounds of marijuana was recovered from the back seat.

After the defendant was placed under arrest and given his Miranda warnings, he repeatedly refused to answer questions. However, he did inquire on his own initiative as to the charge and his potential bond amount. Despite his injury and his repeated refusals to offer any information or answer any further questions regarding his culpability, Deputy Matkin continued questioning the defendant on the way to the emergency room. Specifically, she asked the defendant "if he wanted to talk about what had happened with finding the marijuana," "where he got the marijuana from," and "why all his belongings were in the car." In response to Deputy Matkin's questions, the defendant made several incriminating remarks, including that he was holding "it" for a friend; he had consumed alcohol at a party the night before; and the car, which was not registered in his name, was packed because he was moving.

The defendant was later indicted for Class D felony possession of marijuana with the intent to sell or deliver and for possession of drug paraphernalia, a Class E felony. In response to the defendant's request for discovery, the State notified the defendant that it planned to use the following statements at trial:

> a. The defendant identified himself
> b. The defendant admitted to drinking a six-pack of beer at a party in Spring Hill.
> c. The defendant said he left the party at approximately 2:00 am.
> d. After the deputies discovered the controlled substance, the defendant was advised of his rights and invoked his Miranda warnings.
> e. At the emergency room, the defendant consented to a blood alcohol test.

The State also indicated in its "Response to Motion for Discovery" that "[a]ll other requested information is either not known to exist or not subject to pretrial discovery pursuant to Rule 16." However, the State announced at the suppression hearing that it planned to use additional statements of the defendant at trial. By appellate brief, the State has listed the statements not supplied to the defendant which it sought to introduce:

> Pre-Custodial Statements
> 1. Defendant gave officers permission to get his identification from the vehicle. . . .
> 2. During the investigation of defendant's accident, defendant stated that he fell asleep, ran off the road and struck a tree losing control of the car. . . .

3. Defendant informed Deputy Matkin that he had just purchased the vehicle, but had not yet registered it in his own name. . . .

4. Defendant advised Officer Bondtrager that all of his belongings (clothes, television, VCR, Playstation and other items) were in the car because he was moving back to his mother's home. . . .

5. After smelling a strong odor of marijuana emanating from defendant's vehicle and after a pair of weighing scales fell out of the car, Deputy Matkin asked whether there was anything in the car that they ought to know about. Defendant responded, "No." . . .

. . . .

Statements Made in Custody

1. When arrested and asked if defendant knew why he was being arrested, defendant said, "Yes, I do." . . .

2. After being *Mirandized*, defendant was asked if he wished to make a statement and he responded, "No." . . .

3. In transit to the hospital, defendant initiated conversation with Deputy Matkin asking what the specific charges were. After being advised of the charges, defendant stated that he was holding "it" for a friend. . . .

The trial judge found, "The only statements that will be admissible are the statements that are set out in the State's response to discovery . . . . Those are the only statements that will be [admissible] in trial." In response to the State's request for "a ruling as to why," the trial judge stated, "Because that's all you discovered to the defendant." In its order, the trial judge stated:

Prior to proceeding on the motion, the assistant district attorney made mention of other statements that were made by the defendant that the defense had been made aware of in General Sessions Court proceedings, namely the preliminary hearing and a violation of probation hearing.

. . . .

Other than the assertions made by the assistant district attorney there is no evidence before this court that the defense had knowledge of the statements not included in discovery. Therefore, the only statements allowed will be those provided in writing to the defendant and the Court grants the Motion to Suppress in part.

Through an additional order, Judge R.E. Lee Davies[2] granted the State's application for interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, stating, "The granting of an interlocutory appeal is necessary because Judge Easter never reached the issue of the

---

[2] Judge Timothy L. Easter drafted the initial order partially granting the defendant's motion to suppress. The record does not indicate why a different judge granted the State's application for interlocutory appeal.

constitutionality of the defendant's statements that were not listed in writing prior to the Motion to Suppress hearing and said issue requires a determination." Upon review, we agree that the trial judge made his suppression determinations solely upon the State's noncompliance with Rule 16. While, we respect the authority and discretion of a trial judge to fashion an appropriate remedy for discovery violations, we determine that a remand of this matter is necessary in order for the trial court to set forth its reasoning for suppressing the defendant's statements.

## Analysis

Pursuant to Rule 16(a)(1)(A) of the Tennessee Rules of Criminal Procedure, the State is obligated to disclose to the defendant upon request "the substance of any oral statement which the State intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogations by any person then known to the defendant to be a law enforcement officer . . . ." Thus, the State is required to reveal the substance of any oral statement made by an accused in response to an officer's interrogation if it is intended to be used either in the State's case-in-chief or rebuttal. State v. Jenkins, 859 S.W.2d 364, 365 (Tenn. Crim. App. 1993); State v. Balthrop, 752 S.W.2d 104, 107 (Tenn. Crim. App. 1988). Tennessee Rule 16(a)(1)(A) is nearly identical to Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure. The Advisory Committee Notes to Federal Rule 16 explain:

> [B]road discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence.

If a party fails to comply with the rules of discovery, the trial judge has wide discretion to affix the appropriate remedy based upon the circumstances of the case. State v. Payne, 791 S.W.2d 10, 16 (Tenn. 1990) (citing State v. Cadle, 634 S.W.2d 623, 625 (Tenn. Crim. App. 1982) ("The suitability of an individual alternative will always depend on the nature of the statement and the basis upon which it is being challenged.")), aff'd on other grounds, 501 U.S. 808 (1991). Pursuant to Rule 16(d)(2) of the Tennessee Rules of Criminal Procedure, a trial judge may either "order [a party in noncompliance] to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." However, achieving the underlying principles of fair and efficient discovery must be the goal of a trial judge in fashioning a remedy for noncompliance. "The exclusionary rule should not be invoked merely to punish either the State or the defendant for the deliberate conduct of counsel in failing to comply with a discovery order. The [trial judge's] contempt powers should be employed for this purpose." State v. Garland, 617 S.W.2d 176, 185 (Tenn. Crim. App. 1981).

This Court has previously held that, when determining the appropriate remedy for noncompliance, a trial judge must consider whether "a party is actually prejudiced by the failure to comply with the discovery order and [whether] that . . . prejudice cannot be otherwise eradicated." Garland, 617 S.W.2d at 185; see also State v. James, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984)

("The sanction applied must fit the circumstances of the individual case. Evidence should not be excluded except when it is shown that a party is actually prejudiced . . . and that the prejudice cannot be otherwise eradicated.") (internal citation omitted). This Court's determination of the necessity of this additional finding of prejudice, particularly to support evidentiary exclusion, has been upheld by our supreme court. Payne, 791 S.W.2d at 16. As the Advisory Committee Notes to Federal Rule of Criminal Procedure Rule 12[3] state, "An automatic exclusion of such evidence, particularly where the failure to give notice was not deliberate, seems to create too heavy a burden upon the exclusionary rule of evidence . . . ."

Our case law is replete with examples of what constitutes actual prejudice. See, e.g., Payne, 791 S.W.2d at 16 (determining that non-discovered evidence was properly admitted when the defendant knew about the evidence almost a week before trial and did not seek a continuance and after concluding that "there is no indication that the State or the police were acting in bad faith or in intentional disregard of the rules of discovery"); State v. Underwood, 669 S.W.2d 700, 704 (Tenn. Crim. App. 1984) (determining no actual prejudice existed when a defendant "had opportunity to know of [the non-disclosed] statements because of the preliminary hearing"); Garland, 617 S.W.2d at 185-86 (determining no actual prejudice existed when non-discovered evidence was not withheld intentionally and of little probative value); State v. Jimmy Joe Rittenberry, No. E2000-02722-CCA-R3-CD, 2001 WL 1464556, at *4 (Tenn. Crim. App., at Knoxville, Nov. 20, 2001) (determining that actual prejudice was shown when a non-discovered statement was introduced at trial, depriving the defendant of the opportunity for a suppression hearing). Summarized, the following factors have been considered in determining whether a party has been prejudiced by another party's failure to comply with discovery: the proximity to trial; the degree to which an aggrieved party was otherwise aware of the undisclosed evidence or should have reasonably been aware in time to have investigated and prepared for the undisclosed evidence's introduction; the importance of the evidence and of its disclosure; the degree to which the evidence is merely cumulative of other evidence bearing on the same or a similar point; the availability and likely effectiveness of less drastic sanctions; the failure of an aggrieved party to seek an alternate remedy; the length of delay in complying with the required disclosures; and whether the failure to comply with discovery rules was willful or inadvertent so as to gain a prejudicial or tactical advantage.

The final factor, whether an offending party willfully and intentionally failed to comply with the rules of discovery, stems from our supreme court's reasoning in Payne and the language of the Advisory Committee Notes to Federal Rule of Criminal Procedure Rule 12, which lends support to exclusion if the failure to give notice is "deliberate." Absent such consideration, it is conceivable that a party could willfully and tactically offend the rules of discovery pretrial without remedy to an aggrieved party by merely relying on the fact that the aggrieved party could not show actual prejudice to the outcome of his or her case. Consideration of the degree of prejudice procured by a discovery violation should assist the trial court in affixing a remedy, not serve to shield an offending party.

---

[3] "[T]he Tennessee Rule was derived from its federal counterpart, Rule 12, Federal Rules of Criminal Procedure . . . ." Garland, 617 S.W.2d at 185.

In the present case, the trial court excluded the defendant's statements based upon the State's noncompliance with discovery, without a finding of prejudice. As previously concluded by this Court and upheld by our supreme court, a determination of prejudice must accompany evidentiary exclusion. The defendant argues that the State purposefully failed to disclose the intended use of the statements in question. It is true that the State has provided no explanation why it waited until the suppression hearing to apprize the defendant of its intended use of additional statements at trial, and the record is clear that the State knew of these statements well before the suppression hearing. The State contends that the defendant knew of these statements and the intended use of each well before the motion to suppress. The trial court is in the better position to weigh and accredit these arguments and determine whether prejudice supports its finding of evidentiary exclusion. The record before this Court is unclear whether the trial court first applied alternative measures before exclusion and whether, as the defendant submits, the State's action was in deliberate "chronic non-compliance . . . with its discovery responsibilities."

In addition, if the court determines that Rule 16 does not require suppression, each of the proffered statements allegedly made by the defendant should also be examined for its constitutionality. In the present case, several of the proffered statements are in response to police interrogation that continued after the defendant had invoked his right to remain silent. Once warnings have been given, if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege . . . ." Miranda v. Arizona, 384 U.S. 436, 473-74 (1966). At the suppression hearing, Officer Matkin admitted that she continued to question the defendant after he repeatedly indicated his desire to remain silent. However, the defendant admitted that, subsequent to invoking his right, he voluntarily engaged in conversation with the officer. This testimony must be examined and accredited so as to determine whether the defendant's constitutional rights were violated and whether any of his statements should be suppressed on such grounds.

## Conclusion

Based upon the foregoing analysis, we remand this case to the trial court for additional findings consistent with the principles stated in this opinion.

 

_____
J.C. McLIN, JUDGE