IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2006

## STATE OF TENNESSEE v. JEFFREY OWEN WALTERS

**Appeal from the Circuit Court for Marshall County**
**No. 15883    Charles Lee, Judge**

_____

### No. M2005-01856-CCA-R3-CD - August 21, 2006
_____

The Appellant, Jeffrey Owen Walters, was convicted by a Marshall County jury of second degree murder and sentenced to twenty-three years and nine months in the Department of Correction. On appeal, he has raised two issues for our review: (1) whether the evidence is sufficient to support the conviction; and (2) whether the State failed to furnish Walters all of his in-custody statements in violation of Tenn. R. Crim. P. 16. Following review, we conclude that the evidence is sufficient to support the verdict, and, although we find that the State violated the discovery rule, we conclude that the error is harmless. Accordingly, the judgment of conviction is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the Appellant, Jeffrey Owen Walters.

Paul G. Summers, Attorney General and Reporter; C. Daniel Lins, Assistant Attorney General; W. Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

The Appellant was convicted of the second degree murder of the victim, Shawn Oliver, which occurred in Lewisburg. The Appellant and the victim had known each other for approximately two years at the time of the homicide. Prior to the shooting, several confrontations had occurred between the two, as well as a confrontation between the Appellant and the victim's friend Samuel Allen. Hostilities between the two apparently stemmed from the Appellant's relationship with Allen's girlfriend. Approximately two weeks prior to the homicide, a verbal confrontation occurred between the Appellant and the victim, and, as the two parted, the Appellant yelled to the victim, "I am going to burn you."

On October 20, 2003, the day prior to the shooting, at approximately 11:00 p.m., the victim and Allen were walking two of the victim's pit bull dogs when they encountered the Appellant. Following the encounter, the Appellant got into his car and drove by them, returning approximately five minutes later. The Appellant exited his vehicle, and, upon approaching the victim and Allen, informed them that he had heard they had been "slick talking" to others about him. The Appellant, at some point in the discussion, retreated to his car where he retrieved a pistol. According to Allen, after further talk among the three, the hostilities were thought to have receded, and the two parties separated.

Later that evening, the Appellant visited his friend and neighbor, Elmo Tears. The Appellant informed Tears that some people were bothering him and that he planned to shoot them. Tears advised the Appellant that "it ain't worth it" and asked the Appellant to leave his gun at Tears' house to avoid further trouble. The Appellant complied.

The next morning, October 21, 2003, Allen called Lasheeka Hill and learned that the victim and another friend, Eric Jett, were driving around looking for the Appellant. Shortly thereafter, the Appellant was informed that the victim and Jett were looking for him, and phone calls between the Appellant and the victim ensued. Hostilities resumed, and it was agreed that the victim and the Appellant would meet at Harmon Park to "handle" their differences by fist fight. According to Jett, he and the Appellant negotiated the terms of the fight, and it was agreed that no weapons would be involved. Nonetheless, at approximately 4:30 p.m., the Appellant called Elmo Tears and informed him that he wanted to retrieve his pistol. Shortly thereafter, Allen, who was at the time driving the victim's car, saw the Appellant on Verona Avenue with a pistol. Allen called to inform the victim of this fact but was only able to receive his voicemail.

The Appellant then got a ride to Harmon Park with Chadrick Lyttle and Shawn Ridley in Lyttle's Chevrolet Caprice. When the victim and Jett arrived at the park in Jett's girlfriend's vehicle at approximately 5:00 p.m., they saw the Appellant, Lyttle, and Ridley standing by the Caprice. The victim exited Jett's vehicle and approached the Appellant, cursing and waving his arms. The Appellant asked Jett if he was armed, and Jett replied that he was not. Jett stated that he turned away for a moment, and, when he looked back, he saw the Appellant pointing a gun at the victim. According to Jett, the victim called the Appellant a "bitch," angering the Appellant. After the victim called the Appellant a "bitch" again, the Appellant fired three times at the victim. The victim fell to the ground, and Jett ran for help. The Appellant, Lyttle, and Ridley left the park in Lyttle's car. A sixteen-year old who had been playing ball in the park approached the victim and applied pressure to his multiple wounds until the ambulance arrived. The Appellant died as a result of multiple gunshot wounds before he could be life flighted to Vanderbilt Hospital in Nashville.

Police investigators processed the crime scene and found three .380 caliber spent shell casings, as well as a pool of blood. The investigation revealed multiple witnesses who observed the confrontation between the two men, as well as the Appellant's departure in the Caprice. No witness saw the victim with any type of weapon, and none was found at the scene.

After making contact with his girlfriend, Tamekia Rhea, the Appellant asked Rhea to drive him to his parents' home. En route, he instructed Rhea to stop at a bridge on Wallace Thompson Road. At the bridge, the Appellant got out of the car and threw a pistol and magazine into the creek below. At approximately 5:20 p.m., the Appellant was driven back to the home of Elmo Tears by Rhea. Tears overheard the Appellant on his cell phone saying that he "don't know if he's dead." Shortly thereafter, the Appellant was driven by Shante Lyles to an O'Charley's restaurant in Franklin. Later, Lyles drove the Appellant back to Lewisburg, and the Appellant returned to Rhea's home. Police received information regarding the Appellant's location, and, at approximately 2:20 a.m., they approached Rhea's house. After police knocked on the front door, the Appellant was observed fleeing from the back door, at which time he was apprehended by the police.

The Appellant was taken to the police station where he was interviewed by detectives. He initially denied any involvement in the homicide, stating that he was at an O'Charley's Restaurant in Franklin at the time of the murder. However, the Appellant abandoned his alibi defense and admitted that he shot the victim, claiming that he fired in self-defense. In his statement, the Appellant asserted that the victim was moving toward him with his hands in his pockets. The Appellant first stated that he saw only the handle of the pistol, but, when questioned further, he advised that he saw more of the pistol including, "the case, the metal of the gun and the black part of the gun." He eventually stated that the entire pistol was visible. However, when confronted about his changing story, the Appellant returned to the position that he had seen only the handle of the pistol. The Appellant also advised the detectives where he had disposed of the weapon, a .380 caliber semi-automatic pistol, although directing them to the wrong side of the bridge. Upon forensic testing, it was determined that the bullet casings found at the crime scene were fired from the recovered weapon.

On November 19, 2003, a Marshall County grand jury returned an indictment against the Appellant charging him with first degree murder. At trial, the Appellant admitted that he killed the victim, arguing that the killing was justified upon grounds of self-defense. The jury rejected the Appellant's self-defense argument, convicting him of the lesser included offense of second degree murder. The Appellant was sentenced to a term of twenty-three years and nine months in the Department of Correction. Following the denial of his motion for new trial, the Appellant filed the instant timely appeal.

## Analysis

On appeal, the Appellant has raised two issues for our review. First, he asserts that the evidence presented was insufficient to support his conviction for second degree murder. Second, the Appellant asserts that the State violated Tenn. R. Crim. P. 16 by failing to furnish him with all of his in-custody statements.

## I. Sufficiency of the Evidence

The Appellant asserts that the evidence presented was insufficient to support the verdict of second degree murder. Specifically, he argues that the State failed to prove that the killing was unlawful, as the State failed to prove beyond a reasonable doubt that the Appellant's actions were not in self-defense.

In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The Appellant was convicted of second degree murder, which is defined as the knowing killing of another. T.C.A. § 39-13-210 (2003). A person acts "knowingly" with respect to the result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. T.C.A. § 39-11-302(b) (2003). Additionally, it must be established that the killing was unlawful. T.C.A. § 39-13-201 (2003).

The Appellant's entire sufficiency argument centers around his asserted claim of self-defense. He does not dispute the fact that he shot and killed the victim. Rather, he argues that the killing was done in self-defense, as the victim was advancing upon him with a pistol. Thus, he asserts that the killing was legally justified.

Tennessee Code Annotated section 39-11-611(a) (2003) provides that a:

> person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily

injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds.

It is well-settled that whether an individual acted in self defense is a factual determination to be made by the jury as the trier of fact. *State v. Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). As such, "in the context of judicial review of the jury verdict, in order to prevail, the [Appellant] must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." *Clifton*, 880 S.W.2d at 743. Moreover, the State has the burden of negating any defense if admissible evidence is introduced supporting the defense. T.C.A. § 39-11-201(a)(3). It is clearly within the prerogative of the jury to reject a claim of self-defense. *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

The only proof introduced at trial supporting the Appellant's claim of self-defense was his own self-serving testimony that he saw the victim pulling a gun from his pocket. However, several witnesses at the scene expressly contradicted the testimony of the Appellant and stated that the victim did not have a weapon in his possession and that his hands were not in his pocket when the Appellant fired the gun. Moreover, no weapon was found at the scene, and witnesses who were present testified that no weapon was removed. Finally, no gun powder residue was found in the victim's pockets, which were tested by the crime lab. Additionally, proof was introduced of the hostilities between the Appellant and the victim, including the fact that the Appellant previously had threatened harm. It was also established that the Appellant specifically procured a weapon prior to going to the park. Presented with this evidence and the ensuing facts that the Appellant shot the victim three times, ran from the crime scene without stopping to call the police or give aid, disposed of the murder weapon, attempted to escape when police came to arrest him, and attempted to manufacture an alibi, we conclude that the jury was well within its purview to reject the Appellant's claim of self-defense. This issue is without merit.

## II. Discovery Violation

The Appellant contends that the State violated Tenn. R. Crim. P. 16 by failing to provide him with all of his in-custody oral statements made to the police. Specifically, he challenges the State's failure to provide him with all of the various versions of his changing story regarding how much or what part of the victim's pistol he saw immediately before shooting the victim.

Rule 16(a)(1) of the Tennessee Rules of Criminal Procedure governing discovery, in relevant part, provides:

(A) Statement of Defendant. Upon request of a defendant the state shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due

diligence may become known, to the district attorney general; <u>the substance of any</u> <u>oral statement which the state intends to offer in evidence at the trial made by the</u> <u>defendant whether before or after arrest in response to interrogations by any person</u> <u>then known to the defendant to be a law-enforcement officer[.]</u>[1]

Tenn. R. Crim. P. 16(a)(1)(A) (emphasis added).[2]

In response to the Appellant's Rule 16 discovery request, the State provided, pretrial, and in relevant part, the following information:

3. The defendant has given an oral statement, the substance of which is as follows: **See written statements and oral statement as follows: October 22, 2003, Defendant started by saying Oliver came toward him with his hand in his pocket; and then said saw the handle of the pistol sticking out of victim's pocket; and then said he said not only butt of gun but also that gun was black; as we continued to question him he changed the story saying Oliver pulled the gun all the way out of his pocket.**

During the direct testimony of Detective Whitsett, the State attempted to elicit from this witness information regarding the Appellant's changing story and precisely what part of the victim's pistol that the Appellant claimed he saw. At this point, defense counsel interposed the following objection:

Today I received, in the form of Jencks material, a multipage report form -- apparently from Detective Whitsett, which tells me for the first time that at the conclusion of his interrogation on October 22nd, 2003, that my client recanted part of his statement about what he -- how much of the gun he saw coming out of the victim's pocket.

I don't - having not been provided with that in discovery, I do not want the State to introduce that before the jury. They are not entitled to. They didn't produce it. He is certainly in an in-custody interrogation, a statement he made. It is right here. I will read the part I object to.

During this time in the interview, [the Appellant] advised when [the victim] fell, he saw the gun come out of his pocket and in the hand of [the victim].

---

[1] The provisions of Rule 16(a)(1) have been construed to mean that the rule requires disclosure of a defendant's written statement, regardless of whether it is to be offered in evidence; however, the State may withhold disclosure of a statement it does not intend to offer in evidence only if that statement is oral. *State v. Hicks*, 618 S.W.2d 510, 513-514 (Tenn. Crim. App. 1981); *see also State v. Delk*, 692 S.W.2d 431, 436 (Tenn. Crim. App. 1985). Written interpretations or summaries of oral statements made by the accused or a memorandum of an interview, even though not verbatim and not signed by the defendant, also fall within the purview of the rule.

[2] Rule 16 was amended effective July 1, 2006, although the substantive provisions of the rule remain the same.

Agent Wesson and I confronted him about this, and he soon . . . recanted that part of his statement saying he only saw the handles. [The Appellant] made a progression from only seeing the handles, to seeing the gun all of the way out and seeing it on the ground. After confronting him about lying about it, he recounted [sic] it.

Now I don't mind about the progression because I was given that part. But I was not given the slightest hint that this man had recanted any part about what he saw in terms of how much of the gun or anything like that.

The State countered that they had complied with the discovery rules by providing the Appellant with the "substance of the oral statement," in that they provided a summary of the oral statement which contained the information that the Appellant had changed his story about how much of the gun was visible, in addition to providing the final statement given by the Appellant that he saw only the handle of the gun. The court, noting that the issue, was "whether the summary provided by the State is descriptive of that which is contained in the officer's statement," observed that the information contained in the two documents was different in that one stated that the Appellant saw the victim pull the gun out of his pocket and the other stated that the Appellant saw the gun when the victim fell to the ground. Additionally, the court noted that the summary of the statement provided by the State recited that the Appellant changed his story only in "that he went from seeing just the handle to seeing the whole gun. It doesn't say that then he turned around and changed again." Following the State's proffer of proof, the trial court asked the State to show "where counsel was ever advised . . . that the [Appellant] denied saying that he saw the entire gun." Upon the State's failure to do so, the court found the State had not complied with Rule 16 because the summary provided did not contain the "substance of the oral statement." After extended argument and numerous clarifications of the court's ruling, consuming 38 pages of trial transcript, the trial court ultimately held that, as a result of the noncompliance, the State would not be allowed to use the oral statement that the Appellant saw the gun when the victim fell to the ground or that the Appellant changed his story a second time returning to the assertion that he saw only the "handles" of the gun.

At trial, the Appellant testified in his own defense. On direct examination, the Appellant testified that during the encounter at the park when he saw the victim's hand coming out of his pocket with the gun, he pulled out his pistol and shot the victim three times. The Appellant further stated that he saw the victim's gun, a small black revolver, near the victim's hand after the victim fell to the ground.

During cross-examination, the Appellant denied informing Detective Whitsett that he saw anything other than the handle of the gun before seeing the gun lying on the ground next to the victim. Moreover, on cross-examination, with regard to whether the Appellant had ever changed his story as to what part of the victim's gun he saw, the Appellant responded, "I have never changed my story about the gun, not once, never."

After the defense concluded its proof, the State called TBI Agent Wesson, who was also involved in the taking of the Appellant's statement, in rebuttal for the specific purpose of refuting the Appellant's testimony that "he had never changed his story about the gun." Again, the Appellant objected to the introduction of his previously rejected statement but was overruled by the trial court who found that "there has been a change, and that is that the [Appellant] has testified [that he did not recant his original statement, saying he had never changed his story about the gun]." Agent Wesson then testified as follows:

> As we approached the end of the statement, I believe it as [Whitsett] asked him - - went back to the gun again - - something about - - I can't recall exactly how this - - but he made another statement about we would find the gun at the scene.
>
> So [Whitsett] said, "So that means that the gun was all of the way out?"
>
> [The Appellant] says, "Yeah, it was all of the way out." So I stopped. I said, "Now, wait just a minute.' I said, "We have talked about his gun several times. First of all, we just saw a bulge. Now the second time we go back, we talk about it again, you saw handles. The third time we have seen metal, and now the gun is all of the way out on the ground." I said, "What is the truth about the whole matter? What happened? What happened with the gun?"
>
> [The Appellant] said, "Well, I saw the handles."
>
> I said, "So you saw the handles; that is the truth? That's all you saw was handles." [The Appellant] said, "That's right. I saw the handles." So that's is where the statement arrives. We arrived at handles, and that is what [Whitsett] put in the [written] statement.

In *State v. Jenkins*, 859 S.W.2d 364, 365 (Tenn. Crim. App. 1993), this court held that the State is required to reveal the substance of any oral statement made by an accused in response to an officer's interrogation if it is intended to be used by the State in either its case-in-chief or rebuttal. The court in *Jenkins* relied in large part upon the holding of *State v. Balthorp*, 752 S.W.2d 104 (Tenn. Crim. App. 1988), which similarly concluded:

> Rule 16(a)(1)(A), Tenn. R. Crim. P., requires the state to reveal the substance of any oral statement made by an accused in response to an officer's interrogation if it is intended to be used in evidence. The state says this rule is not applicable in this case because they do not have to reveal rebuttal evidence on discovery. We do not agree with this proposition.
>
> The rule makes no exception for statements to be used in rebuttal, and to hold that it does would greatly diminish the value of the rule.

*Id*. at 107.

Although the issue of whether the State complied with the discovery rule by providing the Appellant with the "substance of the oral statement" is close, we agree that a discovery violation occurred. Accordingly, under the controlling case law decisions of *Balthrop* and *Jenkins*, we are bound to conclude that the introduction of the undisclosed evidence during rebuttal was error. Notwithstanding error, to necessitate a reversal due to a discovery violation, the defendant must prove prejudice. *See State v. Payne,* 791 S.W.2d 10, 16 (Tenn. 1990), *aff'd, Payne v. Tennessee* 501 U.S. 808, 111 S. Ct. 2597 (1991).

The following factors should be considered in determining whether a party has been prejudiced by another party's failure to comply with discovery: (1) the proximity to trial; (2) the degree to which an aggrieved party was otherwise aware of the undisclosed evidence or should have reasonably been aware in time to have investigated and prepared for the undisclosed evidence's introduction; (3) the importance of the evidence and of its disclosure; (4) the degree to which the evidence is merely cumulative of other evidence bearing on the same or a similar point; (5) the availability and likely effectiveness of less drastic sanctions; (6) the failure of an aggrieved party to seek an alternate remedy; (7) the length of delay in complying with the required disclosures; and (8) whether the failure to comply with discovery rules was willful or inadvertent so as to gain a prejudicial or tactical advantage. *State v. Michael D. Street*, No. M2004-00299-CCA-R3-CO (Tenn. Crim. App. at Nashville, July 20, 2005).

The Appellant argues that prejudice resulted from allowing the introduction of his oral statement because it served to attack his credibility, which was paramount in this case based upon his asserted self-defense argument. However, the Appellant has failed to identify anything that he could or would have done differently if the State had complied with the rule. Even absent the erroneous admission of the testimony, the State's proof against the Appellant was overwhelming. Several eye witnesses at the scene related that they observed no weapon in the victim's possession. Moreover, several other witnesses of the State testified in direct contradiction to the Appellant's testimony regarding relevant issues, raising a doubt as to the Appellant's credibility. Thus, the effect of Wesson's testimony on the Appellant's credibility had little or no impact upon the verdict. Because no prejudice is found, reversal is not required.

## CONCLUSION

Based upon the foregoing, the judgment of conviction is affirmed.

_____
DAVID G. HAYES, JUDGE